WILLIE JACKSON v. STATE OF MISSISSIPPI.

[47 South. 502.]

1. CRIMINAL LAW AND PROCEDURE. *Murder. Evidence. Dying declaration. Sense of impending dissolution.*

The declarations of a dying man are sufficiently shown to have been made under a sense of impending dissolution to make them admissible in evidence, if otherwise competent, where it was shown that the deceased had been informed by his attending physician that there was no hope for his recovery and that he announced, when he made the declarations, that he was going to die, that he could not live and that his stomach was killing him.

2. SAME. *Same. Killed for nothing.*

A dying declaration is admissible in evidence, where otherwise competent, although it be merely the statement by the declarant that accused killed him for nothing.

3. SAME.  *Prosecuting lawyer.  Improper argument.  Harmless error.*

> A statement by the prosecuting lawyer, in argument to the jury,
> to the effect that more murders had been committed in the county
> than elsewhere in the state, and that it was high time for the
> juries to put a stop to them, does not constitute reversible error
> where upon objection the court advised the jury that it was im-
> proper and should be disregarded.

FROM the circuit court of Yazoo county.

HON. WILEY H. POTTER, Judge.

Jackson, appellant, was indicted for the murder of one Bunk
Wilson, was tried, convicted of manslaughter, sentenced to the
penitentiary for three years, and appealed to the supreme court.

Appellant, deceased, and several other negroes were at the
home of a negro woman, and as a result of certain remarks pass-
ing between appellant and deceased a difficulty arose between
them in which appellant stabbed deceased with a knife. Before
his death the deceased made statements to different persons, as
set forth in the opinion, and after being told by a physician that
he was bound to die in a very short while and had better say any-
thing he desired to say, the dying man stated: "I didn't do noth-
ing to Willis Jackson to make him cut me that way. I only told
him that I did not joke."

In the supreme court the appellant assigned as error the ad-
mission of the dying declaration in evidence, on the ground that
a predicate had not been properly laid in that deceased was not
sufficiently shown to have been at the time in apprehension of im-
mediate death. The remarks made to the jury by the prosecut-
ing lawyer in his speech were also assigned as error; the lawyer
said: "Gentlemen, your county is running red with human
blood from the northern boundary at Free Run to the southern
boundary where she bathes her feet in the muddy waters of the
Big Black, and from the banks of the Sunflower to the Illinois
Central Railroad at the town of Vaughns. There have been
more murders committed in your county than in any other
county in the state, and there are more being committed now in
this county than ever before in its history, there being fourteen

murder cases pending for trial in this county. It is high time
that the juries of the county shall put a stop to these murders."
When the foregoing language was used, counsel for the defense
immediately interposed an objection thereto as being improper,
and the objection was at once sustained by the court, the jury
being advised by the court to pay no attention to the remarks
touching other murders or cases but to try the case solely upon
the evidence. The court further, in the jury's presence, repri-
manded the prosecuting attorney for his language, whereupon
the attorney stated that when interrupted he was about to tell the
jury, that they should not try the defendant by any other evi-
dence than that adduced at the trial and if they did not believe
from the evidence that defendant was guilty beyond reasonable
doubt they should acquit him.

*Holmes & Holmes,* for appellant.

The court below erred in admitting the testimony of the three
different witnesses in reference to the dying declaration of de-
ceased. The predicate of such declaration was based upon the
following preceding remarks of the declarant, made to each of
the three witnesses respectively: (1) "I am going to die. I can-
not live. My stomach is killing me." (2) "Austin, I am dying.
I cannot live." (3) "Uncle Will, my stomach is killing me."
The principle is too well known for comment that the declarant
must not only feel the absolute certainty of death, but his expec-
tation must be of a speedy death. An expectation of ultimate,
yet distant, death does not produce that sincerity of statement
which the law desires. The impression of immediate dissolution
must exist in the declarant's mind before his statements will be
admissible after his death. The mere fact that the deceased
shortly before his death stated that he could not live, and that
he was going to die, will not show that he believed that he was
then *in extremis* and that death was not only inevitable but im-
pending and immediate. *Titus v. State* (Ala.), 23 South. 77.
The expressions, "my stomach is killing me" and "I cannot live"

are expressions of great pain, of physical suffering, but not direct expressions tending to show that the declarant expected his death to be imminent. *Justice v. State* (Ala.), 13 South. 658.

It is a well-established rule that in the admission of dying declarations the primary facts which lay the predicate for the admission of such declaration are to be closely and carefully scrutinized and considered, and unless they are clearly satisfactory to the judicial mind they should be rejected.

In this case, where the issue was so close, the most careful and deliberate judgment of the jury was required, and anything constituting an infringement upon any of his rights was most prejudicial to appellant. Hence, the language used by the assistant prosecuting attorney in his argument of the case before the jury gives ground for reversal of the judgment of the court below. By his argument the jury were without doubt inflamed in their minds and prejudiced against appellant. There must be some restraint upon the arguments of counsel for the prosecution in criminal cases. Certainly in this case the assistant prosecuting attorney had no legal right to talk before the jury about "other murders." To go outside of the record, as was done, and to state to the jury that there had been about fourteen murders committed in the very county from whence the jury were drawn, and to urge the jury to put a stop to these murders, must be held to be an infringement upon appellant's constitutional rights, he being on trial for a capital offense.

*George Butler,* assistant attorney-general, for appellee.

The objection by appellant that there should be a reversal because of the admission of the dying declaration of the deceased is without merit. It was clearly proved on the trial below that the declarant knew he was about to die and that death was impending. He had been informed by a reputable physician, in whom he had confidence, that his death was imminent, that he could not possibly live. Hence his declaration was properly allowed

to go before the jury. *Lipscomb v. State*, 75 Miss. 559, 23 South. 210, 230.

As regards the contention of appellant that the remarks of the assistant prosecuting attorney, made before the jury in his argument of the case, were improper, it is merely necessary to call this court's attention to the fact that the court gave timely instruction to the jury that they should not regard these remarks and also admonished the attorney while before the jury that such remarks were inappropriate. It is hardly probable that the jury, men of intelligence and prudence, would be swept away from a calm contemplation of the case by these remarks, even if the court had not immediately taken the prudent steps it did.

CALHOON, J., delivered the opinion of the court.

The predicate of the dying declarations of the deceased Williams, in this case, testified to by two or three witnesses, collated, was as follows: He stated, "I am going to die. I cannot live. My stomach is killing me." This was at twelve o'clock at night, and Williams died the next day, before noon. Another witness testified that the deceased said: "Austin, I am dying. I cannot live." Another that he said: "Uncle Will, my stomach is killing me." The attending physician testified, quoting the words of the witness: "I told him he had only a few minutes to live. He asked me if I could do him any good at all, and I told him, 'No;' that he would die in a few minutes." We think the predicate showed a condition of mind in reference to dissolution that made the statement of facts admissible in evidence. It was then ruled by the court that the dying declaration could be admitted, and it was put in evidence before the jury, containing the statement of the facts of the occurrence, and this ruling of the court we think was right. In William's statement to the doctor there was no detail of the facts, but he did say that the accused "killed him for nothing." The credibility of the witnesses who testified to the declarations was for the jury.

,We find no reversible error in the case. The language of the assistant counsel for the prosecution to the jury, while in practice wrong, does not constitute reversible error; the objection having been sustained by the court, and the jury properly warned to pay no attention to it, but to try the case solely upon the evidence before them.

The judgment is affirmed.

