WILKERSON v. STATE.

(Division B. Dec. 31, 1923. Suggestion of Error Overruled Feb. 11, 1924.)

[98 So. 770. No. 23353.]

1. CRIMINAL LAW. *Homicide. Admissibility of dying declarations determined in absence of jury; dying declarations should be shown admissible beyond reasonable doubt; admission of dying declarations without hearing in absence of jury harmless where competent; objection to inadmissible portion of dying declarations should be specific.*

When dying declarations are offered in evidence, the trial judge before admitting them should determine their admissibility in the absence of the jury, and should hear all the evidence bearing on their admissibility, and if the evidence does not show

them to be admissible beyond a reasonable doubt should exclude them; but on appeal the court will look to the whole record and if the declarations were admitted and are competent the court will not reverse because the judge did not hear the evidence in the absence of the jury. If a dying declaration is partly admissible but certain statements are not, the objections should be specific and not general.

2. CRIMINAL LAW. *Objection to testimony of witness must specify irrelevant statements.*

In a homicide trial where a witness, in describing the scene and place of the homicide, testifies to facts that he observed and that it "looked like where he struggled with" the defendant, the objection was made in general terms which included both the relevant and the irrelevant statements; *held*, that the court did not err as the objections in such case must be specific, particularizing the irrelevant statements objected to.

3. HOMICIDE. *Character shown by general reputation and not specific instances.*

In a homicide trial where the character of the defendant for peace or violence is involved, the evidence is confined to the general reputation in the community where the party lives and specific instances are not admissible.

4. CRIMINAL LAW. *Instruction as to weight of testimony proper notwithstanding cautionary instruction as to weight of dying declarations.*

In a case of homicide where dying declarations were admitted and where the defendant procured cautionary instructions telling the jury that dying declarations should be received and considered with great caution and subject to close scrutiny, etc., it is not error for the court to grant an instruction for the state that the court does not intimate what worth it thinks the jury should give to the testimony or any part of it, but that it was for the jury to determine for themselves such matter.

APPEAL from circuit court of Scott county.
HON. G. E. WILSON, Judge.

Henry Wilkerson was convicted of manslaughter, and he appeals. Affirmed.

*Easterling & Nichols,* for appellant.

I. The court erred in refusing to hear the testimony as to the dying declaration in the absence of the jury,

and in refusing the defendant's counsel the right to cross-examine the witnesses offered by the state as to such dying declaration.

It will be observed that the trial court announced that the defendant's counsel would not be permitted to cross-examine this witness as to the alleged dying declaration, and that the state's counsel would not be required to go into the matter of the dying declaration fully, in the absence of the jury. This being made manifest by the court, defendant's counsel not wishing to appear captious, asked the court if he would consider a running objection to all these questions and answers with reference to the dying declaration as to the details of homicide, or anything else said by him. This was allowed by the court and it was agreed to by the court that all the testimony as to the dying declaration afterwards following would be introduced over the objection and the exception of defendant's counsel, and that the court would allow the district attorney afterwards with this and other witnesses to go into a full investigation of these facts before the jury, and not allowing nor permitting any further hearing before the court in the absence of the jury.

It has been held by this court in *Lambeth* v. *State,* 23 Miss. 354; *Beel* v. *State,* 76 Miss. 507; *Fanny* v. *State,* 101 Miss. 380; *Sparks* v. *State,* 133 Miss. 266, that the proof of the competency of a dying declaration must be made to the court beyond a reasonable doubt before it is admissible. This ruling was also approved in *McNeil* v. *State,* 115 Miss. 678, 76 So. 625. In *Marley* v. *State,* 69 So. 212, it will be seen that the trial court excluded all statements made by the deceased as to his private business as immaterial and prejudicial to the defendant.

If the trial court in this case had given defendant's counsel an opportunity to examine the witnesses in the absence of the jury, all testimony of this character could have been eliminated, however, not only was it not elimi-

nated in this case, but it was by the court allowed to go to the jury.

This court deals with this question, in *Lipscomb* v. *State,* 23 So. at page 214. We earnestly submit that the action of the trial court in refusing to conduct or allow defendant's counsel to conduct a preliminary examination into these matters was a denial to this defendant of a right to be heard either by himself or counsel in an important step of his trial.

II. Appellant also submits that the court was in error in allowing and permitting the state to prove as a part of the alleged dying declaration many statements, facts and circumstances which were highly prejudicial to this defendant, and not necessarily a part of said declaration.

The state was permitted to prove, over the defendant's objection, that the boys of the deceased were told to take care of his property and their mother and his little children. The state was permitted to prove, over defendant's objection, that friends were called upon to pray for him. In fact, the testimony along this line without regard to whether it was before or after the alleged dying declaration, was permitted by the trial court to be introduced, and continued up to and included the actual last breath of the deceased.

Appellant contends that the court was in error in admitting testimony of conclusions and opinions by witnesses for the state who testify with regard to the physical signs at the scene of the difficulty. We have heretofore stated and quoted testimony to show the court that there was a vital issue between the witnesses for the state and the witnesses for the defendant as to where the deceased was at the time when the shooting began.

We submit this court in two cases exactly in point has condemned this character of testimony, and held that admission of such testimony is a reversible error. *Foster* v. *State,* 12 So. 822; *Temple* v. *State,* 82 So. 429.

III.  Appellant submits that the trial court was in error in sustaining objections to questions propounded by the defendant's counsel, and seeking to place before the jury the defendant's reputation for peace in the community in which he lives.  We have already undertaken to show the court that there was a sharp conflict in the evidence as to the defendant's guilt or innocence, and that while in our opinion the great preponderance of the evidence supported the defendant's statement of how the shooting occurred, yet there was testimony for the state accepted by the jury to the contrary.  Under these circumstances it became of vital importance to this defendant that he be granted by the trial court the benefit of his character for peace as this was a strong circumstance tending to corroborate his story in regard to the shooting.

On what has been said in reference to the introduction of evidence of good character, we refer to *Hussel v. State* (Ala.), 6 So. 423, 424; *Coleman* v. *State,* 59 Miss. 490; *French* v. *State,* 63 Miss. 393; *Pickens* v. *State,* 61 Miss. 567, 568; *State* v. *Grate,* 68 Mo. 27; 1 Wigmore on Evidence, 55 et seq.

*J. W. Cassedy,* also, for appellant.

There is a rule of law that is universally applicable to dying declarations, as follows: "No dying declaration, nor any part of one, is admissible in evidence unless the same would be competent and relevant if made by a living witness." *Lipscomb* v. *State,* 75 Miss. 559, 23 So. 230; *Guest* v. *State,* 96 Miss. 871, 52 So. 211.  See, also, *McNeal* v. *State,* 115 Miss. 691.

The state's whole case rested on the place where the difficulty took place.  In *Cumberland* v. *State,* 110 Miss. 521, the state contended that Cumberland shot and killed Liddell in a crap game, dragged his body about seventy-five yards, laid a knife across his hand and a pistol by his side.  Cumberland claimed that he killed him in

necessary self defense at the place where the body was found lying. The state used one purported eye witness who said that Cumberland shot the man while they were in a crap game. According to the state's contention, if Cumberland killed Liddell at the crap game, it was murder; if he killed him where the body was found, it was justifiable homicide. The witness, McElroy, testified, "it looked like there had been a crap game there." This case was reversed, and rightly so. The court held that McElroy should have stated the facts and let the jury draw its own conclusions therefrom.

Now we respectfully submit that the witness Bob Weems in the case at bar, could not truthfully have stated that there had been a struggle between Wilkerson and Jones at this indicated place, and that they knocked the rails back. He should have described the condition there, and not stated, "it looked like where he struggled with Mr. Wilkerson." It was up to the witness only to describe the condition and permit the jury to draw its own conclusions. We respectfully submit that in view of the fact that the state contended that the shooting took place at the corner of the rail fence and that Wilkerson contended that the shooting took place between the rail fence and his garden, that this highly prejudicial testimony should and will reverse this case.

*H. T. Odom,* Assistant Attorney-General, for the state.

I. I am unable to agree with counsel for appellant that the action of the trial court with reference to the admission of dying declaration herein was either improper or prejudicial to the appellant. The district attorney in the absence of the jury examined the wife of the deceased with reference to the dying declaration of her husband. The examination as it appears to me was sufficient to determine the admissibility of this evidence. It discloses that the statements were made by the deceased at the time when he was conscious that he could

not live, and further that the statements were made in contemplation of death. When the trial court is satisfied of these facts this is all that is required.

It is again insisted that the court erred in permitting the state to prove over defendant's objection that deceased told one of his boys to take care of his property, their mother and his little children. There can be no merit in this contention for the reason that it is further circumstance tending to show that deceased fully realized his impending dissolution. The jury who is the sole judge of the weight and worth of this testimony, should also be informed as to the frame of mind of the declarant in order that they may determine the proper weight to be given to the statement. Again I do not see how this testimony could be prejudicial to the appellant because it was in evidence that the appellant had killed the deceased and further that the deceased had left a widow and children, on the mercy of the world. In other words, this particular testimony did not put any new or additional fact before the jury that would be calculated to bias their judgment in rendering a verdict.

I deem it unnecessary to cite authorities dealing with the admissibility of dying declarations. The court is entirely familiar with this law. I have carefully examined the authorities cited by appellant and have reached the conclusion that the trial court did not do violence to any of these decisions in the trial of the case at bar. I have no quarrel to make with any of these decisions, but respectfully submit that they do not support counsel in their contention here.

II. Counsel for appellant next complains because the trial court permitted two witnesses for the state after testifying to certain physical facts, to give what they term a conclusion or an opinion from said facts. They insist that the admission of this class of testimony was highly prejudicial to the defendant because of the theories

of the state and the defendant with reference to the exact point where the fatal difficulty took place.

In the first place counsel for appellant assigns no reason for his objection to the testimony in the court below nor any reason why same should be excluded. It occurs to me that it would have been fair to the trial court to have informed him at the time of the reason upon which he objected and why the testimony should be excluded.

I take the position that although the general rule is that a witness should not be allowed to state his conclusions after detailing the facts and that usually this is within the province of the jury, yet there are well-defined exceptions to the foregoing rule, and that in the instant case the general rule does not apply. See 1 Wharton on Criminal Evidence (10 Ed.), par. 460, wherein we find numerous exceptions to the foregoing rule, where witnesses are allowed to testify as to their conclusions as to facts which cannot be expressed in the concrete.

In the case of *Smith* v. *State* (Ala.), 34 So. 396, the court held that: ''Where, on a prosecution for murder, it appeared that deceased was shot by some one near his house, it was proper to permit a witness to testify that a track that he saw after the shooting, and which led from defendant's barn along a field towards defendant's house, looked, where it left the barn, like the track of one running, and in the field like the track of a person walking, such statements not being matters of opinion but descriptive of facts.''

III. Taking the testimony complained of in the case at bar where the witness testified that he saw tracks and signs that looked like where some one had been struggling, it is readily seen that it would be impossible for a witness to convey to the jury sufficient information for the jury to infer what had happened without stating to them what the facts indicated. This is all that the witness did, and all he attempted to do, and I respectfully submit that it was entirely proper.

Counsel cites *Foster* v. *State,* 12 So. 882, and *Temple* v. *State,* 62 So. 429, in support of his contention that the evidence under consideration was improperly admitted. In both of these cases the court held that it was error to permit a witness who had examined the room in which the homicide occurred and found blood marks on the wall, to testify that in his opinion the person firing the shots must have been located at a certain place in the room.    I do not think it necessary to attempt to draw a distinction between these cases and the case at bar. Clearly in those cases the witness was not describing the facts but was attempting to draw an inference from the facts which should have been left to the jury.

IV.    It is admitted that the defendant in all cases has a vested right in his good reputation, if he has one, and the trial court in the case at bar permitted the defendant to produce a number of witnesses to testify that they knew the defendant's reputation for peace and violence in the community in which he lived and that it was good.    There is not a scintilla of testimony in the record contradicting the appellant's testimony on this point, yet he complains and says the trial court prejudiced his rights in the case by refusing to allow a witness who had already testified that the appellant was uniformly regarded as a peaceable man, to answer the following question:  "Q.    You never had heard of any trouble that he ever had with anybody?"    The action of the trial court in sustaining the state's objection to the foregoing testimony was eminently correct as I understand the rule. In an inquiry of this kind it is not permissible to go into details and the witness can only answer whether it is good or bad, if he knows.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted for the murder of Sidney Jones, and on trial was found guilty of manslaughter and

was sentenced to serve ten years in the state penitentiary, and from said judgment appeals.

The deceased and the appellant were near neighbors and the public highway ran by the premises of each. Wilkerson, at the time of the killing, was engaged in plowing a ditch along the public highway, which ditch turned across the highway into the premises owned by Jones. The state's evidence consisted of the dying declaration of the deceased Jones as to the beginning of the difficulty, together with certain physical facts, and the testimony of the wife and son of the deceased, whose attention was attracted thereto by the firing of the first shot. The wife of the deceased was first introduced and testified first as to the dying declaration. According to this declaration the statement was:

"The first thing he said, 'I am going to die;' that was the first word. He says, 'I am going to die; Henry Wilkerson has shot me all to pieces and he has shot me for nothing.' Q. State whether or not from that time on until he died, if you were with him almost constantly? A. Yes, sir; I was out and in the house all the time. Q. State whether or not you heard him make statements from time to time about whether he would live or die? A. He said he was going to die from the time I got to him until the breath left him. Q. Did he in your presence say anything to you or any of your children about taking care of things? A. Yes, sir. Q. Tell the court what he said about that? A. He told Floyd in my presence—said, 'Floyd, I am going to die; Henry Wilkerson has shot me all to pieces; I want you boys to take hold of everything and do what is right.' Q. State whether or not you heard him say to people there in the house—state whether or not you heard him ask different parties to pray for him? A. I heard him ask Pa, Mr. Sanders, and everybody while I was in the room. Q. When he asked these parties to pray for him, did he say anything about living or dying? A. He told them he was going to die, and when he did he wanted

to go to heaven.  Q.  As the wife of this gentleman who is now dead, did he ever in your presence express any hope of getting well?  A.  No, sir; he never did.

"By the District Attorney:  That is all we care to offer in the absence of the jury.

"By the Attorney for the Defendant:  Dying declarations are preliminary matters to be heard and passed on by the court in the absence of the jury; it is unfair to the defendant to permit witnesses to detail purported declarations to the jury, and then exclude that part of them that is incompetent; when the jury hears incompetent declarations it is calculated to influence their minds as if they were excluded; if the state declines to go into them, I think we should.  (To which statement the state objected.  The objection was sustained.  Defendant excepted.)

"By Attorney for the Defendant: Now, if the court please, I want a running objection to all of these questions and answers with reference to purported statements of the declarant as to the details of the homicide, or anything else said by him.

"By the Court:  Very well, they will be overruled; let the record show an objection, and let it be overruled. (Exceptions by the defendant.)"

It is insisted that the court erred in not hearing all of the witnesses and all of the evidence pertaining to the dying declaration in the absence of the jury preliminary to its admission in evidence before the jury.

The rule is well established in this state that the judge, when dying declarations are offered, should hear all of the evidence offered bearing thereon in the absence of the jury to determine whether or not the dying declarations are competent, and if there is a reasonable doubt of their competency, they should be excluded.  *Bell* v. *State,* 72 Miss. 507, 17 So. 232; *Lipscomb* v. *State,* 75 Miss. 559, 23 So. 210, 230; *Fannie* v. *State,* 101 Miss. 378, 58 So. 2; *McNeal* v. *State,* 115 Miss. 678, 76 So. 625.

We think the court at the request of the defendant should have heard all of the evidence in the absence of the jury bearing upon the competency of the dying declarations, but it is not reversible error in this case because, looking through the record of the completed trial with the objections made, no reversible error was committed. The objection above set out to the dying declarations does not object to any particular part of the dying declarations, nor does the objector state any evidence that he expects to show that would make it incompetent. The objection seems to be based upon the idea that incompetent evidence might be offered before the jury, or that some evidence subsequently introduced might render, or tend to render, the dying declarations incompetent. In *Lipscomb* v. *State, supra,* the court held that a general objection was not sufficient where a part of the dying declaration was admissible, but that objections must be specific, specifically made to the incompetent parts. It is argued by the appellant that repeated statements made by the deceased and the requesting of prayers and referring to the disposition of his business should not have gone to the jury.

We think the dying declarations offered in evidence were admissible as shedding light on the state of mind of the declarant, and that it is proper to show in evidence the surroundings of the declarant, and expressions showing his state of mind, which tend to show he was or was not under the conviction that death was impending. The weight and credibility of dying declarations would of course depend wholly upon the declarant's state of mind. Of course the judge passes upon the competency of such declarations in the first instance and the jury have nothing to do with the competency of the dying declarations; but the weight to be given to the dying declarations is for the jury's determination and the expressions offered in evidence tending to prove that the declarant was conscious that he was in a dying condition were relevant facts for the consideration of the jury. The several wit-

nesses introduced by the state on the dying declarations testified strongly that the declarant stated he was going to die and that the defendant shot him for nothing. The defendant introduced Dr. King who on cross-examination was interrogated as to whether the deceased had not stated that the defendant shot him for nothing and answered: "Yes, sir; he said that; he said 'he considered he shot me for nothing.' " The question propounded to the witness, "Did he say Wilkerson shot him for nothing?" was objected to and the objection overruled, and after the answer there was no motion to exclude the answer; neither was there anything specifically offered when the dying declarations were first offered before the judge to show that the defendant had made these statements or that the defendant had expected to prove by this witness these statements. The question propounded by this witness was competent, and if a motion to exclude had been specifically made after the answer it would perhaps have been sustained.

Taking the full record on the dying declarations and looking at the record of the completed trial, we are unable to say that any error was committed in the admission of the dying declarations of the deceased. It may be true that the facts detailed were handled by the district attorney with telling effect; but one of the things a person must reckon with when he takes human life is that he may be prosecuted therefore and the circumstances as detailed in the dying declarations may be used against him with telling effect by a prosecuting attorney, and the court cannot reverse a case where the evidence is properly admitted even though such evidence might tend to arouse the jury against the defendant. There is nothing in the record to show if the jury were improperly influenced by anything that was said or that the trial was in any way unlawfully conducted as to the admission of the dying declarations and the arguments thereon.

134 Miss.—55.

It is next urged that the court erred in not sustaining the objections to the testimony of Bob Weems as to appearances at the scene of the homicide. The testimony complained of is as follows:

"This is the public road (illustrating), and there is a wire fence right along by the public road, and there is a rail fence here (illustrating), and there is a garden on the other side over here ten or fifteen steps (illustrating), and right at this rail fence (illustrating), the rails on top of the fence were knocked back, looked like where he struggled with Mr. Wilkerson. . . ."

Defendant objected to this testimony and moved the court to exclude it and his objection was overruled. The objection made in the record is as follows: "Now, if the court please, I object and move to exclude that statement from the consideration of the jury." The objection and the motion to exclude are addressed to the whole testimony and not to any particular expression. The words set forth in the brief as being erroneous are "looked like where he struggled with Mr. Wilkerson." The motion did not separate this from the rest of the testimony. The objection ought to have been specific and singled out the particular part which was considered objectionable. A general objection in such case was insufficient where part of the answer was incompetent and the bulk of the answer was clearly competent. The words "looked like where he struggled with Mr. Wilkerson" should have been excluded, but we do not think it reversible error to overrule the objection as made. The witness continued his answer as follows: "and right at this rail fence (illustrating) four steps from this road (illustrating) was blood all over the leaves, and I tracked the blood all around the corner down a path and into a public road, and right along here (illustrating) there was a little plowing down by this garden, and across the public road there was some mule tracks, looked like where there was an excited mule. . . ." Defendant objects; overruled; defendant excepts.

It will be noted the objection is a general objection and the witness was describing the scene of the homicide to the jury, and the jury viewed the scene. If the objection had been specific to that part of the statement, "looked like where there was an excited mule," it would probably have been sustained, and the witness would have been required to describe what he saw. It is true that the question as to whether the mule was hitched to a tree at the time of the shooting was a very important fact, and a statement of the witness as to the appearance of the ground tended to sustain the theory of the prosecuting witness who testified that the mule was hitched while the shooting was taking place. However, as stated above, where the objection is general and part of the statement objected to is competent and the court overrules the objection, the court will not reverse, but it devolves upon the party objecting to point out specifically the part that is objected to. In describing appearances and conditions of places like the one involved here, it is difficut to get the average witness to refrain from stating conclusions and blending his conclusions with his details of the facts, and if the conclusions are objectionable they should be specifically objected to and a motion to exclude should be directed specifically at the incompetent part of the witness' statement.

A number of objections were made in the progress of the trial to the statements, and a number of propositions were propounded bearing on the bad character of the deceased for peace and violence, and the good character of the defendant. The court, we think, correctly adhered to the rule, and limited the examination to the general reputation of the parties for the trait of character involved, and refused to permit the details of the specific instances to be gone into. The witnesses as to the character of the defendant for peace and violence qualified and testified that it was good. Questions like the following were asked and excluded: "You never heard of any trouble he had with anybody?" This ques-

tion followed a statement that the man was universally regarded as a peaceable man, and of course it was not reversible error. Another question following the general statement that the defendant was a man of good reputation for peace in the community, "Did you ever hear anything to the contrary?" was objected to, which objection was sustained.

The test, of course, is the general reputation and not whether specific instances might or might not have been known. Of course where a man's character has never been called in question or discussed, that fact itself is evidence of good character, but where a witness testified that he knows the reputation of a person for such trait of character and that such reputation is good, that is sufficient. Likewise the examination with reference to the character of the deceased was proven by his general reputation in the community in which he lived. Specific instances of difficulties which the deceased had with other people were sought to be elicited. The court rightfully confined the examination to the general character of the trait involved in the community in which the parties lived, but permitted the witnesses on cross-examination to be tested by specific instances without permitting the details to be gone into. We think there was no error in the ruling of the trial court in admitting or rejecting evidence along these lines.

The state procured the following instruction which was assigned for error:

"The court instructs the jury for the state that the jury is the sole and only judge of the weight and worth and credibility of the dying declarations in this case and every other part and parcel of the evidence in this case, and it is the duty of the jury to give to each and every part of the evidence such weight as the jury itself thinks that it is entitled to, and the court does not intimate, in any instruction in this case, what worth it thinks you should give to the testimony, or any part of it, for this is the sole province of the jury, and upon your shoulders,

and no one else's shoulders, is the duty of passing on the question of what weight, if any, shall be given to the evidence by the jury."

It is objected to this instruction that it counteracts and weakens the effect of the cautionary instruction of the defendant on the intrinsic weakness of dying declarations. We do not think that the giving of this instruction is error. It is not rightfully subject to the criticism made because there is a distinction and difference between receiving and acting upon .evidence with care and caution, and in telling the jury that they are the sole and only judges of the weight, worth, and credibility of dying declarations, and it was permissible for the court to tell the jury that the court did not undertake to express his individual opinion upon the weight and worth of such testimony.

The defendant's instruction which is alleged to have been weakened or nullified reads as follows:

"The court charges the jury for the defendant that the statements of the witnesses purporting to be repetitions of the dying declarations of Jones are liable to imperfections and mistakes, through a lack of clear and exact expression of the meaning of Jones, and also through a misunderstanding by the witnesses of the statement actually made by Jones, or by their intentionally altering or failing to remember some of the expressions used by Jones, whereby an effect is given to the dying declarations at variance with what Jones actually did say; and you are therefore instructed that while such repetitions of the dying declarations of Jones are admissible in evidence, yet they should be received and considered by the jury with great caution and subject to close scrutiny, and given such consideration as they are entitled to, in view of all the evidence in the case."

A careful reading of the two instructions, we think, will show that there was no error in giving them. We are therefore of the opinion that there is no reversible error in the record and the judgment should be affirmed.

*Affirmed.*