## WALTON v. STATE.

(Division A. Feb. 10, 1930. Suggestion of Error Overruled, Feb. 24, 1930.)

[126 So. 29. No. 28388.]

500

Herbert M. Fant, of Sardis, for appellant.

**Wm. A. Shipman,** Assistant Attorney-General, for the state.

Argued orally by **Herbert M. Fant**, for appellant.

**McGowen, J.**, delivered the opinion of the court.

The appellant, Bishop Walton, was jointly indicted with Bessie McKennie by the grand jury of Panola county for the murder of Sammie Walton, deceased wife of the appellant. Upon motion of Bessie McKennie, a severance was granted. On a separate trial, appellant was convicted of manslaughter and sentenced by the court to serve a term of five years in the state penitentiary, from which judgment he appeals to this court.

The facts deemed necessary to an understanding of this case are as follows:

The appellant and Bessie McKennie were charged with murder—the killing of Sammie Walton, the deceased wife of the appellant. The killing occurred at a "supper" in a negro schoolhouse, at nighttime, in the country. The deceased, Sammie Walton, was there, and, upon a difficulty arising in the schoolhouse in which the brother-in-law of the appellant was involved, she went outside and

approached a car in which appellant, Bessie McKennie, and a number of other negroes were seated, calling to him as she approached the car. Not receiving a reply, she called a second time, requesting him to come into the schoolhouse and quiet a disturbance there in which his kinsman was involved. At this instant, the woman, Bessie McKennie, springing from the car, uttered a profane and obscene insult to the deceased, and, from the testimony, it appears that the appellant was getting out of the car from the same side at about the same time. As the McKennie woman sprang from the car, Sammie Walton, the deceased, stabbed her with an ice pick which she had in her hand, and thereupon the McKennie woman countered by stabbing the deceased several times, the testimony tending to show that the stabs inflicted by Bessie McKennie were in the shoulder and back of the deceased. The appellant intervened in the fight between the two women, and separated them, holding his wife and pulling her backward to the rear of the car in the dark.

After the combat between the two women was over, it was found that Bessie McKennie was stabbed in the breast, and that the deceased had received a superficial gash on her shoulder and a slight knife wound near the fourth rib in her right side to the rear, and a deep wound or stab over her appendix, which penetrated to the abdominal canal, causing part of her intestines to protrude. The deceased on her way back to the schoolhouse after the combat, having become so weak from the wounds inflicted, staggered, and had to be supported by her husband, at which time she said, "I am cut to death." Immediately thereafter she was placed in a car and driven to the office of Dr. Alexander, her husband accompanying, and holding her part of the time. On the drive from the scene of the difficulty to the doctor's office, Flora Smith, an occupant of the car with the appellant and his wife, stated that the appellant said: "Flora, I have done told Sammie, the nap-headed G— d— son of a b—

about jumping on Bessie in a crowd. Aint no two jump on Sammie but two or three could do it,'' and that he addressed this remark to his wife.

Dr. Alexander treated the deceased from early Sunday morning until Tuesday, when he directed that she be sent to a hospital at Oxford, where she remained until she died. In an effort to save her life, an operation was performed, and on the Saturday afternoon following she made a statement to the effect that ''she was going to die; she could not get well, and not to worry about her,'' and on Sunday afternoon, about twenty-four hours later, she died. When making this statement, she said that, when appellant intervened in the fight between Bessie and her and pulled her behind the car, he stabbed her in the stomach with a knife. This statement was made to her mother and several witnesses, who, in the main, agreed about it. She stated that Bessie McKennie stabbed her in the back, and that the appellant, her husband, stabbed her in the stomach.

The mother of the deceased testified that her ''intestines were cut in two,'' and that two holes were cut in her bladder; that she saw her thus at the time of the operation on Thursday afternoon before the statement was made by the deceased; that about fifteen minutes before her death the deceased said to her that ''she was fixing to leave her.''

Dr. Alexander, the physician who examined the wound, on cross-examination was asked the following question: ''This wound that was in Sammie's stomach, or somewhere in that locality, was the wound that caused her death?'' and answered as follows: ''Yes, sir.'' The doctor further stated that a wound of this nature and character is not necessarily and always fatal; that he remembered a similar case where the victim recovered.

The dying declaration of the deceased was objected to specifically on the ground that the declarant did not make the statement under a sense of impending death, and

counsel for appellant moved to exclude all the evidence of the state, and asked for a peremptory instruction at the close of the evidence. The court heard the statement and submitted it to the jury.

It will be observed that the only evidence as to the stabbing of the deceased by the appellant is contained in her dying declaration. Practically all the witnesses in the case stated they could not see what occurred when the appellant drew the deceased to the rear of the car. Appellant denied using any weapon, or inflicting any wound upon his wife, and the testimony given by him was to the effect that he was peacemaker in the difficulty. There was testimony admitted by the court over the objection of the appellant to the effect that he was very attentive to Bessie McKennie, and that on several occasions, when his wife needed him, it was necessary to send to the house of Bessie McKennie for him.

■ As to the dying declaration made on Saturday afternoon after the wounds inflicted on the preceding Sunday: The statement was full as to the fight between the deceased and Bessie McKennie, but we do not deem it necessary to recite it here. The statement was, "I am going to die; I cannot get well; you need not worry about me." It is true that, in order for a dying declaration to be admitted in evidence, the trial judge must believe (1) beyond a reasonable doubt that the declaration was made under the realization and solemn sense of impending death; (2) it must have been the utterances of a sane mind; (3) it must be restricted to the homicide and the circumstances immediately attending it, and forming a part of the res gestae; (4) a declaration, or part of it, is not admissible, unless it would be competent and relevant if it were the testimony of a living witness; and (5) great caution should be observed in the admission of dying declarations, and the rules which restrict their admission should be carefully guarded. In this case it was shown that the declarant was of sound mind, realized

what she was saying, that she had been dangerously wounded internally, and that an operation had been performed on Thursday, and that she did not evince the slightest hope of recovery. As we see it, this statement does not differ materially from the statements usually presented in cases of this kind. It is a stronger statement for the admission of a dying declaration than that in Wade v. State, 147 Miss. p. 479, 112 So. 677; Jackson v. State, 94 Miss. 83, 47 So. 502; Wilkerson v. State, 134 Miss. 853, 98 So. 770. In the case last mentioned, the declaration was, ''I am going to die.'' It was continually repeated, while the statement in the instant case was only repeated again fifteen minutes before her death, which occurred just about a day from the time she made her first declaration.

In Snell v. State, 109 Miss. 744, 69 So. 593, the statement was, ''I will never get up,'' which is quite a different statement from the one we have here, ''I am going to die; I cannot get well; you need not worry about me;'' and the court here held that the record did not show the declarant to be of such state of mind as to warrant the introduction of the declaration. We think the dying declaration was properly admitted as such in this case.

■ It is insisted that the court erred in permitting the evidence to be introduced of appellant's assiduous attention to Bessie McKennie after the infliction of deceased's wound and before her death. It was shown that it was necessary to often send to the home of Bessie McKennie to get the appellant when his wife needed his attention, and that he was constantly with the woman who had stabbed her, and not attentive to the deceased, his wife. This unnatural action of the appellant was competent in evidence against him, for the reason that it tended to show that he was unfriendly in a marked degree to his wife, and that his admiration for his wife's assailant furnished a motive for him to stab his wife, as

detailed by her. We agree with counsel that this evidence was calculated to influence the jury.

"Testimony as to conduct and appearance, the acts of the accused, and desire to elude discovery, attempts to conceal the crime, malice toward the deceased, or motive for taking life, indifference to suffering or to the fact of the homicide, are relevant both as incriminatory and exculpatory circumstances. Thus it is relevant to show that the accused and the wife of the deceased slept together the night after the homicide and were heard talking together for a long time." 2 Wharton Crim. Ev. p. 1743.

The other objections urged here are without merit, and there is no reversible error in this record.

Affirmed.