POWELL *v.* STATE.

No. 41498          February 29, 1960          118 So. 2d 304

*William Liston,* Winona; *Brad Dye, Jr.,* Grenada, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

GILLESPIE, J.

Indicted for the murder of his brother, Walter Powell, appellant was convicted of manslaughter. The sole question for decision is whether a statement made by deceased just before he died, which tended to exonerate appellant, was admissible as a dying declaration.

Appellant and deceased were staying at the home of their father, who was away from home at the time of the homicide. Deceased sustained a gunshot wound in the thigh. He was shot with a shotgun. It occurred about 4:00 A.M. Appellant was the only surviving eye witness. Appellant put a towel on the wound in an effort to stop the bleeding, summoned help, and deceased was taken to the hospital. Thereafter deceased was removed to the Veterans Hospital in Jackson where he died as a result of said wound about three weeks later.

There are two versions of how deceased was shot: One, the State's version, based on a statement attributed to appellant and which was said to have been made short-

ly after the shooting; the other, appellant's version, based on his testimony at the trial.

The sheriff and another testified that after deceased was taken to the hospital appellant told the sheriff and the other witness that while appellant was lying on the bed in one of the bedrooms of the father's home the deceased came into the room. Appellant raised up and put his feet on the floor and reached over and got a loaded shotgun, and shot the deceased; and that deceased had no weapon. No reason was given for the shooting. In his testimony, appellant denied making the statement to the sheriff. Appellant's father, who was present when the statement was made, according to the sheriff, denied appellant made the statement.

Appellant testified at the trial and gave the following account of the shooting: Appellant and deceased were out together and appellant came home alone and went to sleep. About 4:00 A.M. deceased came to the house and appellant opened the door to let him in. Deceased was angry with appellant because he was slow in opening the door and struck at appellant. Deceased then went to his room, took off his clothes, and then went into the room where appellant was lying on the bed and began hitting at appellant. Appellant grabbed deceased and while they were struggling deceased reached and got a loaded shotgun belonging to their father which was standing against the wall, and while they struggled with the gun, appellant, who had hold of the stock end, jerked the gun away from deceased and as he fell backward to the floor the gun discharged, the charge striking deceased in the thigh. He contended that the shooting was accidental.

Appellant offered the testimony of Dr. McPhail who talked to deceased at about 12:30 P.M., which was about forty minutes before he died. Dr. McPhail told deceased he was critically ill, his chances were narrowing, and that he felt his family should be notified. Deceased knew

that death was imminent, and he was rational. Dr. Mc-Phail then asked deceased who shot him, and deceased replied: "It was my brother, but he didn't shoot me, it was accidental." The doctor asked no further questions. The court below heard this testimony in the absence of the jury, and then sustained the State's objection and excluded it from the jury on the ground that the statement of deceased was a conclusion or opinion and was not admissible under Hardeman v. State, 216 Miss. 115, 61 So. 2d 797.

██ ██ This Court adheres to the general rule that a dying declaration is not admissible if it is an expression of the declarant's opinion, mental impression, or comes from a course of reasoning from collateral facts (inference). To be admissible, it must be a statement of fact. The sole question in this case is whether the statement of deceased should be classified as one of fact. There is no rigid line between the two classes of statements, and the difference is often shadowy.

In Payne v. State, 61 Miss. 161, the statement that defendant shot deceased ". . . without any cause whatever" was held to be a statement of fact and not an opinion or inference. In Power v. State, 74 Miss. 777, 21 So. 657, a statement made to the accused by the deceased that ". . . you have killed me without cause" was held to be a statement of fact. In House v. State, 94 Miss. 107, 48 So. 3, the dying statement that "Dee House killed me, and killed me without cause" was held to be a statement of fact and admissible in evidence. In Jackson v. State, 94 Miss. 83, 47 So. 502, the statement of the deceased that accused "killed him for nothing" was held to be admissible. Critically speaking, all of these statements could be considered as expressions of the declarant's opinion. In principle, the statement that the accused "killed me without cause" is no different from the statement of the deceased in this case when the deceased said of the shooting, ". . . . it was accidental."

The former implies guilt, the latter innocence. If one is a statement of fact, so is the other. Some authorities refer to a statement such as the one involved in this case as a collective fact. Lipscomb v. State, 75 Miss. 559, 23 So. 210; Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. 2d 29, a leading case where the court reversed the lower court's refusal to admit a dying declaration that "It was accidental." That case is directly in point.

■■■ The rule deducible from the authorities in cases involving border line statements is this: It it appears that the statement, when viewed in the light of the surrounding circumstances, was the direct result of observation through the declarant's senses, the circumstances were such that the declarant could know whereof he spoke and intended the statement to be one of fact, and the statement in everyday language is commonly understood as a statement of fact, it should be admitted in evidence.

Hardeman v. State, supra, is in our opinion not in point. In that case the statement was that "We were playing and he would not have done it for anything intentionally." The Court admitted that part thereof which said, "We were playing." The rest of the statement was excluded by the lower court and this Court affirmed on the ground that the part excluded was no more than a belief or opinion on the part of declarant. The statement in that case did not purport to be a statement of fact. We think that such statement in everyday language would be commonly understood to be a statement of opinion or belief. The circumstances did not show that declarant was in position to know whereof she spoke because in final analysis she was declaring on the state of mind of the accused toward her. This was not a statement on the border line between fact and opinion. It was not what some of the courts have denominated a collective fact. It was pure opinion.

■■ In our opinion the learned trial judge was in error in excluding the dying declaration which tended to exonerate appellant. The value is for the jury.

Reversed and remanded.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.