## JOHN HERMAN v. STATE OF MISSISSIPPI.

1. CRIMINAL LAW.    Murder.    Evidence.    Previous offense.

On the trial of one charged with a particular crime, the general rule is that the evidence must be confined to the issue joined as to the specific offense, and evidence showing, or tending to show, accused guilty of a prior offense, is incompetent.

2. SAME.    Exception to the rule.

An exception to the general rule renders competent evidence showing, or tending to show, the accused guilty of a prior offense, if it is offered to show motive or intent in the commission of the crime for which the accused is being tried.

3. SAME.    Homicide.    Evidence.

The introduction in evidence of a knife found a month afterwards near where the decedent's body had been discovered, there being nothing to identify the knife as that of the accused, or to show that it had been used in the commission of the homicide, was improper, but in this case not reversible error.

4. SAME.    Burden of proof never shifts.    Instruction.

The burden of proof in criminal cases is upon the state, and it never shifts so as to rest on the accused.    An instruction predicated of the idea that the burden of proof may be shifted, is inaccurate, and may or may not constitute reversible error, according to the character and peculiarities of the case.

5. SAME.    Reasonable doubt.    Want of evidence.

A reasonable doubt may arise, in certain cases, from a want of evidence, as well as out of the evidence produced, especially where the principal fact is in dispute, and a conviction is sought on circumstantial evidence only; but, ordinarily, a conviction will not be reversed because the instructions on the subject of reasonable doubts are limited to such doubts arising from the evidence.

FROM the circuit court of Harrison county.

HON. THADDEUS A. WOOD, Judge.

The appellant was indicted for the murder of one Minnie Swan.  Upon the trial the court gave the state an instruction, number 3, which was in these words: " Every homicide is presumed, in law, to be malicious, and therefore murder; and when the killing has been proven to the satisfaction of the jury, and beyond every reasonable doubt, the law will presume the malice requisite 'to murder, and the burden of proof is then shifted to the defendant to show some circumstance of alleviation, justification, or excuse, unless these arise out of the evidence which has been adduced in the case.    The sixth instruction given for the state was as follows, viz.': " While it is true that the state must make out its case to the satisfaction of the jury, and beyond every reasonable doubt, yet-it is also true, that the doubt which should induce a juror to withhold a verdict of guilty, must be a reasonable doubt; must be a doubt for which a reason can be given, a doubt which reasonably arises out of all the testimony in this very case.''

The defendant requested the court to give, but the court refused, the following instruction, numbered 1, viz.: "The court instructs the jury that, where the state relies on circumstances for a conviction, the circumstances must be such as apply exclusively to the defendant and such that would exclude all reasonable doubt as to defendant's guilt, and if the state has not done this and you have still a reasonable doubt in your mind, then you must acquit defendant.''

The defendant was convicted, sentenced to the penitentiary for life and appealed to the supreme court.

*Mayes & Harris*, for appellant.

The third instruction is a copy of the fourth one in Hawthorn's case, 58 Miss., 778, 780.    And it is true that in said case this court declared that the instructions for the state, except specific ones, were unexceptionable.    But we respectfully submit that the instruction—the third one in this case—was objectionable and illegal, and that it was an inadvertence in the

court to accept it as good in Hawthorn's case. It was a very natural inadvertence. The objection which was urged to the instruction in that case was not the objection which we shall now present; and in pronouncing upon it the court was speaking *diverso intuitu;* and the decision of the objections made there was correct.

The point made there against the instruction was that it was error to say that the mere proof of killing raised a presumption of malice; and that was the question on which the court held that it was unobjectionable—a holding with which we make no quarrel. But the point we now present was not urged.

There are three main propositions involved in the instruction : (1) Every homicide is presumed in law to be malicious, and, therefore, murder; and when the killing has been proved beyond a reasonable doubt, the law will presume the malice requisite to murder; (2) and, unless circumstances of alleviation, justification or excuse arise out of the evidence adduced in the case, then (3) the burden of proof is shifted to the defendant to show some circumstance, etc. Now, this instruction can only mean this: That when the state shall have closed its case, unless the testimony of the state discloses circumstances of alleviation, etc., the burden of proof shifts to the defendant to show them. A jury would certainly so understand the instruction, and would understand that the defendant must show it by testimony. We affirm that the burden of proof never does shift in a criminal case. *Ford* v. *State*, 73 Miss., 734–739. But the still more serious fault is that it lays on the defendant too heavy a burden in asserting that he must show circumstances of alleviation. The jury can only understand the word " show " to mean that he must prove circumstances of alleviation. The true rule is announced in the Hawthorn case itself, page 787. " We do not regard as correct," said the court, " the statement in the opinion in *Head* v. *State*, that the true rule is : ' If there be no justification or excuse for the homicide by the accused shown in the evidence adduced by the state,

then the accused is guilty of murder, unless he has by his evidence proved excuse or justification. The true rule is that the accused should be convicted if from the whole evidence there is not a reasonable doubt of his guilt.' "

To put it in a nutshell: the vice of the instruction is that it requires the defendant to show or prove his circumstances of alleviation, instead of allowing him simply to raise a reasonable doubt from the evidence as a whole. A second very serious objection to this instruction is this: In the Hawthorn case, as we understand it, there was no controversy over the fact that the accused did the killing. Here the agency of the accused in the killing is the principal fact in controversy, and the attempt of the state is to connect the accused with it by circumstantial evidence only. The instruction necessarily assumes this very fact. It tells the jury, in plain language, that ." when the killing has been proven to the satisfaction of the jury," etc., then that "the burden of proof is then shifted to the defendant to show some circumstance," etc. Nowhere is the defendant given the benefit of the doubt as to his agency in the killing, even after the killing is shown. *Non constat* that the woman may have been killed by some other than the defendant, yet the defendant, because it is shown that she was murdered, is required to show that he had an excuse for killing her. *Non constat* but that she may have killed' herself, yet the jury is told that the only predicate necessary for the state to lay is to show that she was killed. Greenleaf's Ev., vol. 3, sec. 134. There was no evidence offered by the state of the physical signs of a struggle, or any *indicia* to negative the possibility of suicide; and that was within the domain of a reasonable doubt. The jury should, in some way, have been warned in this instruction that they must believe that the killing was done by the accused. That was the very point in the case. *Webb* v. *State*, 73 Miss., 456.

The sixth instruction for the state is clearly within the express condemnation of *Knight* v. *State*, 74 Miss., 140. Just

as in the Knight case, so here, the very point at issue is the want of proper evidence connecting the accused with the killing. Both were cases of circumstantial evidence, turning on the question of the identity of the slayer with the accused in this case; of the two horses in the Knight case. The principle of the two cases is exactly the same.

The court refused the defendant's first instruction. Unquestionably it should have been given. It simply announced the doctrine that, in a case of circumstantial evidence, in order to convict the accused, the testimony must connect the accused with the homicide beyond a reasonable doubt. The court seems to have *shied* at the expression, "the circumstances must be such as to apply exclusively to the defendant." That expression puts it pretty strongly; but it is the law, and the defendant has a right to it and he asked it. *Lamar* v. *State*, 64 Miss., 428; *Webb* v. *State*, 73 Miss., 456–460.

We submit that it was error in the court to allow the admission of the knife offered in evidence by the state. 85 Va., 607; 61 Vt., 153; 89 Iowa, 182; 94 Iowa, 646; 91 Ga., 277; 94 Ala., 68; 103 Ala., 8. It cannot be said that the prisoner was not prejudiced. The knife paraded before the jury in that connection must have been a grewsome object.

*Wiley N. Nash*, attorney-general, for appellee.

Appellant and the woman he was convicted of having murdered had beyond question lived in unlawful cohabitation. It appeared equally as certain that at the time of the murder there had been an estrangement between them. In 1895, appellant tried to kill the deceased; he made threats against her life more than once, and just previous to the killing. Appellant and the woman left her house together—went off together the same night of the killing. A man and a woman were seen together on the beach, late at night, the very day of the killing, near where the woman's dead body was found the next morning, her throat having been cut. The effort appellant made to

---

---

buy up witnesses against him are strong incriminating facts. The whole matter was submitted to a jury, and they found against appellant.

When the instructions are considered, it will be seen that the law of the case was correctly given to the jury. The court is asked especially to examine the fourth and seventh instructions given appellant. These cure all error, if there be error, in the charge given for the state.

WOODS, C. J., delivered the opinion of the court.

On the trial below, evidence of an assault with an open knife by the prisoner upon the deceased, about one year before the homicide for which he stands convicted, was admitted over the prisoner's objection, and this action of the trial court is assigned for error.

The general rule is that on the trial of one charged with a particular crime, the evidence must be confined to the issue joined as to that specific offense, and that usually evidence showing, or tending to show, the accused's guilt of another offense, at some prior time, is incompetent. This rule is founded in reason, for to allow the introduction of evidence of other and distinct offenses, would confuse and mislead the jury as to the real issue to be determined, would prejudice the prisoner by irrelevant matter, and would require him to meet charges foreign to the specific offense laid to his charge. This rule, however, is not without exceptions, and one of the excepted classes is where the evidence of a former, distinct offense is offered to show intent or motive in the commission of the crime charged. It is useless to refer to other excepted classes from the general rule, for, manifestly, this evidence of a former assault by the prisoner upon the deceased was offered to show motive for the murder alleged to have been committed. That the evidence of the former assault was incompetent, and governed by the rule and not the exception, seems clear to us. The former assault was, in point of time, too remote, it hav-

ing been committed nearly twelve months before the murder charged in the indictment; and, besides this, the evidence satisfactorily and undisputedly shows that after the former assault, and before the date of the murder charged, the mental attitude of the prisoner towards the deceased had undergone a complete revolution. The prisoner, until the very evening before the murder is charged to have been committed, had been a frequent visitor of the deceased, and for some time before that event had regularly visited the deceased at her home about twice each week. He was there the day before as a visitor, and he is shown to have had an engagement to return to her home on the very evening on which the deceased was last seen alive. All this is wholly inconsistent with a malicious motive and murderous purpose entertained by the prisoner all along during the period intervening between the former assault and the alleged murder, and up to the date of the murder as charged.

Not being admissible, therefore, for the purpose of showing motive or intent, and not being any part of one transaction culminating in the supposed homicide, but a separate and distinct offense committed long before, the action of the court in declining to exclude this evidence of the former offense is such error as requires a reversal of the judgment. This incompetent evidence not only may have seriously prejudiced the accused, but such must have been its inevitable effect.

The introduction of a knife found near the spot where the body of the unhappy dead woman was discovered was improper. There was nothing which was offered in evidence that even tended in any degree to identify the knife so found as that of the prisoner, and there was nothing in the appearance of the knife itself, when found, that indicated that it had been used in putting to death the poor woman. Besides, the knife was only found about a month after the body of the deceased had been first seen after her death. While this was error, we do not desire to be understood as holding that this alone and of itself would require a reversal, in the absence of any other error.

The third instruction for the state was bad in so far as it informed the jury that "the burden of proof is [then] shifted to the defendant;" that is, the burden of proof was shifted to the defendant after a killing had been proved to the satisfaction of the jury beyond every reasonable doubt, the legal presumption of malice being raised by the unexplained killing. The burden of proof in such cases never shifts, as this court has before held, and the charge was erroneous to the extent indicated; but this inaccuracy of technical statement might or might not constitute reversible error. Whether reversible error or not would be dependent upon the character of the case and its peculiar circumstances. If clear that injury might have come to the accused by reason of the error, a reversal would follow, but otherwise not. Let this error be avoided on a future trial, if unnecessary controversy is to be avoided.

It is said, moreover, by counsel for the prisoner that this third instruction for the state is vicious, because it goes further than to declare the burden shifts to the defendant and puts upon him the duty of showing circumstances of alleviation, justification or excuse by his evidence, instead of instructing the jury that no conviction could be had if, from the whole evidence, there was reasonable doubt of guilt. We agree with counsel, as was declared by this court in Hawthorn's case (58 Miss.), that "the true rule is that the accused should be convicted if, from the whole evidence, there is not reasonable doubt of his guilt;" but we do not agree with counsel in his construction of the language employed in this third charge. The evidence adduced must mean, we think, all the evidence in the case. It is to be observed that this charge was not dealing with the question of reasonable doubt. The jury was elsewhere fully instructed as to the reasonable doubt.

But it is further said that the charge assumes the fact of killing in this case, and that, as this fact was in controversy, the charge was erroneous in making this assumption. We do not so understand the charge. It is an abstract statement of

two or more legal propositions and not a charge upon the facts of this particular case.

The sixth instruction for the state is also thought by counsel to be erroneous, in not informing the jury that a reasonable doubt might arise out of the want of evidence as well as out of all the testimony in the case. That a reasonable doubt may arise, in certain cases, from a want of evidence, as well as out of the evidence actually produced, is undeniable; and that the trial judge who heard this case below would have so instructed the jury (the case being one of circumstantial evidence purely) if he had been requested to do so, we have no doubt. The charge given is the stereotyped one on this subject, and is the law; but in certain classes of cases, especially those where the principal fact is in dispute or doubt, and a conviction is sought on circumstantial evidence only, it may well be said that a reasonable doubt may arise from a want of testimony, and, in such case, the person wishing the additional charge should, ordinarily, ask it. If he should not, however, in a proper case, and the stereotyped charge only is given, we might feel constrained to reverse for the error, as we did in the case of *Knight* v. *State*, 74 Miss., 140.

We do not think there was error committed by the court below in refusing the defendant's first instruction. We do not understand exactly what the charge does mean. If it means that every circumstance detailed by each and every witness must exclusively apply to the defendant, then it was erroneous because that was impossible, and would only have confused the mind of the jury. If it means that the circumstances must conclusively point to the defendant as the guilty man, then we say that the character and effect of the circumstantial evidence had been fully explained to the jury in other charges. If it means that the proven circumstances must exclude any other hypothesis than that of defendant's guilt, then we say the jury was elsewhere fairly and fully instructed on that subject. And so we see no error in refusing the charge.

Admonishing the state's counsel to avoid the possible errors in the charges referred to by us, we reverse the case for the erroneous rulings of the court in admitting incompetent and prejudicial evidence of the former assault, committed twelve months before the murder is charged to have been committed.

*Reversed and remanded.*