HESDORFFER  v.  HILLER.

[71 South. 166.]

1. WITNESSES.  *Confidential communications.  Husband and wife.  Competency.*

The husband or wife may testify against the other after divorce, if the testimony does not relate to privileged communications.

2. WITNESS.  *Competency.  Husband and wife.*

Where a husband pledges his wife's stock certificate which purported to have been endorsed by her, and subsequently was divorced from her, he was a competent witness against her to establish her endorsement of the certificates, since if she endorsed them to enable him to borrow money upon them, she could not have deemed the transaction confidential.

3. WITNESS. *Competency. Husband and wife.*

Code 1906, section 1916, provides that husband and wife may be introduced by each other as witnesses in all cases, and shall be competent witnesses in their own behalf and against each other in all controversies between them, this statute does not affect the common law rule as to the competency of a divorced husband to testify against his wife in a suit in which there is no controversy between the husband and wife, such common law rule being that either the husband or wife may testify against the other after divorce if the testimony does not relate to privileged communication.

APPEAL from the chancery court of Madison county.
HON. P. Z. JONES, Chancellor.

Suit between Leontine Hesdorffer and Effie Greener Hiller. From a decree in favor of Hiller, Hesdorffer appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

*H. B. Greaves,* for appellee.

COOK, P. J., delivered the opinion of the court.

This suit was begun in the chancery court of Madison county to settle the question of ownership of five shares of capital stock of the Illinois Central Railroad Company. Mrs. Effie G. Hiller obtained title to the stock by gift from her husband. The stock was hypothecated to secure a loan made to D. M. Hiller, the husband of Effie G. Hiller. Mr. Hiller failed to pay the loan, and, at his request, the promissory note evidencing the loan, together with the railroad stock, was sold, appellant Leontine Hesdorffer becoming the purchaser thereof. The hypothecated stock, when it came into the possession of the bank, was indorsed in blank. Mrs. Hiller, the owner, denied that she indorsed the stock, or authorized anyone to write her name thereon. The chancellor, after hearing the evidence, awarded the stock to Mrs. Hiller.

On the trial below, the appellant offered in evidence the deposition of Mr. Hiller, in which he testified that appellee, his wife, indorsed the certificate in his presence and delivered it to him to be sold or pledged. This deposition was suppressed on the ground that husband and wife are incompetent witnesses against each other; and this ruling of the chancellor is assigned as error. The point is made here that Mr. Hiller, subsequent to the time he says Mrs. Hiller indorsed the note, and before his deposition was given, had been divorced from his wife, and therefore, he was not incompetent to testify. The contention is made that the divorce removed his disability as a witness and the chancellor erred in refusing to consider his deposition.. Counsel have not cited any decision of this court wherein the precise point presented by this record was in issue, and we assume that none exists. The cases cited by appellee are not in point. Our statute does not seem to touch the facts of this case, and we must go to the rules of the common law for a solution of the question.

There can be no question that the chancellor was right in suppressing the deposition of Mr. Hiller if his deposition discloses a confidential communication between himself and his wife. The court is irrevocably committed to the ironclad inflexible rule that a husband or wife will not be permitted to detail in court the confidences of the marital relation. What are the facts, if Mr. Hiller is to be believed? Mr. Hiller purchased five shares of the Illinois Central Railroad Company's capital stock and presented same to his wife. According to Mr. Hiller's story, Mrs. Hiller authorized him to use this stock as collateral for loans to be obtained by him, and in order to pass title to same she indorsed the certificates in her own hand. After this transaction, and after the courts had severed the bonds of matrimony between him and his wife, will the courts permit him to tell about this transaction between himself and his wife, over the objections of his divorced wife? If to relate this story it can be said that

the witness will be disclosing the confidences of husband and wife, we think the answer will be in the negative. On the other hand, if the witness is merely relating an ordinary business transaction, which the wife could have made with any other person, and which cannot be reasonably termed confidential, the answer must be the reverse. This transaction was to be acted on, and third parties were to be induced to part with their money upon the faith of it. If Mr. Hiller is telling the truth, Mrs. Hiller has set a trap for the money changers, and the trap has been sprung. Necessarily, when stocks are offered as collateral for a loan, the ownership of the stock is a matter to be inquired about by the person making the loan. The certificate in this case was filled out in the name of Mrs. Hiller; the transfer of same purports to have been made by her; and her signature purports to have been written by her. Can it be said that Mr. Hiller would be betraying the confidential communications of his wife if he informed the bank that the signature of his wife was written in his presence? We think not. It does not seem reasonable that if Mrs. Hiller signed this certificate in the presence of her husband, for the purpose of enabling him to borrow money by using it as security for the loan, she considered, or could reasonably consider, the transaction as a confidential arrangement not to be mentioned by her husband. If, in fact, Mrs. Hiller did indorse the certificate, she is attempting to perpetrate a fraud under the cover of martial confidences. She knew, or should have known, that Mr. Hiller would put up this stock and get money on her indorsement. She knew, or should have known, that Mr. Hiller would tell the banks just what he told the court in his deposition. In the very nature of things, she could not have deemed the transaction confidential.

Now the marriage contract has been dissolved and Mr. Hiller has no interest in this transaction, and he is competent to testify if his testimony does not relate to privileged matters.

"The incompetency of one to testify against the other, while often treated in the same way as the incompetency of one, to testify for the other, is based on the policy or sentiment that to permit such testimony would disturb the harmony of the marriage relation, rather than upon the idea of interest in the event of the suit, and there are exceptions that do not exist when one is testifying for the other. Both of these cases should be distinguished from mere privileged communications. As to the latter it usually makes no difference whether the husband or wife is a party or not, and the privilege may be waived, but death or divorce does not destroy the privilege." Elliott on Evidence, vol. 2, sec. 732.

This reasoning of the learned text writer points out the true rule of the common law. The husband or wife may testify against the other after divorce, if the testimony does not relate to privileged communications. Neither could testify for the other because of the identity of interest.

Mr. Wigmore, writing on this subject says:

"Nor is it material that the testimony relates to matters which occurred during the marriage. The few rulings taking the contrary view are misled by the analogy of a different privilege, namely, that which prohibits the disclosure of marital confidential communications."

This is the crux of the whole matter: Does Mr. Hiller's testimony disclose "confidential communications?" If not, he is a competent witness against his wife, all identity of interest having been destroyed by the divorce decree. This court had in mind the distinction made here when it decided the case of *Whitehead* v. *Kirk*, 104 Miss. 776, 61 So. 738, 62 So. 432, 51 L. R. A. (N. S.) 187. We used this language in that case: "Of course many things are said and done by husband or wife, which on their face bear no semblance of confidence."

Section 1916, Code 1906, leaves the common-law rule applicable to the facts of this case as it originally existed. The statute removes the disability of the husband

or wife on account of their identity of interest, and permits either to certify against each other ''in all controversies between them.''· For the purposes of this decision, we will assume that the statute has nothing to do with the present case, there being no controversy between husband and wife. So, at last, the common-law rule will control. We find that the testimony of Mr. Hiller does not disclose a confidential communication between himself and his wife. This being true the divorce decree removes all incompetency of the witness to testify. The husband and wife are no longer one. The chancellor erred in suppressing the deposition of Mr. Hiller, and the judgment of the court below is reversed and the cause is remanded.

*Reversed and remanded.*