CARTER *et al. v.* STATE.

(Division A. Feb. 6, 1933. Suggestion of Error Overruled March 6, 1933.)

[145 So. 739. No. 30073.]

332

T. B. Davis, of Columbia, for appellants.

334

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Argued orally by **T. B. Davis**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**McGowen, J.**, delivered the opinion of the court.

Appellants, Fred and Murray Carter, together with their father, J. W. V. Carter, were indicted for murder in the killing of Robert McCain. Fred and Murray Carter were brothers, and Robert McCain was their brother-in-law, having married their sister. A severance was granted the father, and the two brothers, the appellants, were jointly tried, convicted by the jury of manslaughter, and sentenced by the court to serve a term of fifteen years in the state penitentiary. The parties to the difficulty lived in the Kokomo neighborhood some distance from Columbia, Mississippi. On the afternoon of the killing, the Carter and McCain families had an altercation, the details of which do not disclose just what caused it, and the parties were separated without injury on either side. During that afternoon there was considerable traveling on the road west toward Kokomo in their automobiles by the Carters and the McCains. Late in the afternoon, McCain, the deceased, accompanied by his children and friends drove towards Kokomo, passing

the Carters in their car. While passing the latter car, some one in it shouted something to the McCains. What was said the record does not disclose. The Carters drove a short distance and stopped, the McCains, coming up in a little while, stopped within a few feet, and both parties got out of their cars. The Carters, father and sons, according to the state's evidence, held their guns upon McCain. In a short time, several members of both contending families assembled there. The state's evidence tends to show that Fred Carter, at a time when McCain, the deceased, was standing within a few feet of the Carters, who, as stated above, held their guns on him raised his gun and shot McCain at a time when no overt act of any kind was shown on the part of the deceased. The record discloses that they stood in this situation for some time, that finally a brother of Robert McCain, the deceased, came up and was requested by McCain to notify the sheriff of his situation, which we have already described, and that he left to do this.

The defense was to the effect that McCain, the deceased, cursed and threatened the appellants, and was in the act of drawing his pistol from the bib of his overalls when Fred Carter, one of the appellants, shot him. Carter claims that he tried to shoot the hand that was drawing out the pistol, to prevent McCain's using it, and not for the purpose of killing him. Many threats of the deceased against the accused were offered in evidence, all of which evidence was admitted by the court.

The appellants sought to show the details of a difficulty between McCain and his wife, the sister of the appellants; that she was beaten unmercifully by him, and her clothing torn from her, on an occasion more than a year prior to the homicide. The court declined to permit any testimony relative to the assault and battery on the wife of McCain. Mrs. Eva McCain, the wife of the deceased, Robert McCain, at the time of his death, and living with him, was introduced as a witness, and no ob-

jection was offered by the state as to her competency as such in the case. She testified as to many threats to kill appellants made to her by her husband, which were communicated to her brothers.

Mrs. McCain, the wife of the deceased, was examined out of the presence of the jury, and in her testimony it was disclosed that on one occasion, when McCain threatened to take the life of the accused, the threat was in connection with the fact, as she stated, that her brothers, the accused, had been active in assisting her in procuring an indictment against the deceased for assault and battery upon her. This evidence was offered by the defendant as a whole, including the details of the assault and battery, the brothers not being shown to have been present or to have participated in that difficulty between the wife and husband, to all of which the court sustained the objection of the district attorney, which was general and in nowise specific; the court not stating at the time upon what ground the objection was sustained.

The evidence of the state tended to show that McCain was killed by the Carters at a time when he was defenseless and helpless. The evidence offered for the defendant tended to establish self-defense.

It is assigned as error that the court should have permitted the details of the assault and battery, alleged to have been committed more than a year before the homicide, on the sister of the accused, to be introduced. That difficulty was a collateral issue, and whatever wrongs had been perpetrated upon his wife by McCain, the deceased, would not have shed light upon this homicide; and the court properly excluded the details and the evidence tending to show the severity and cruelty of the beating administered to his wife by the deceased. Counsel cites many cases, and confuses, in our opinion, the principle of lawmaking competent, when properly connected, evidence of previous difficulties between the parties, the deceased and the accused, and the rule as

to a wholly disconnected difficulty between the deceased and a third party, to which the accused was not a party nor in any way a participant.

Counsel for appellant cite the case of Clark v. State, 123 Miss. 147, 85 So. 188, in which case Clark killed Boles, the deceased. They had both been rivals for the hand of the same woman. She married the appellant, Clark. On one occasion prior to the killing, deceased went to appellant's home, found his wife alone, and there ravished her, sending an insulting message to the husband of what he had done, and that he intended to kill the husband so that he might have the woman for himself. This evidence being excluded by the trial court, this court said that the above-quoted testimony was admissible, and that the threats should have been admitted together with evidence of the rape, saying the circumstance under which the threat was made was competent to show its meaning and significance. The rape, the message, and the threat were inseparably linked together. The case is easily distinguished from the rule which obtains in this state by which this court holds that evidence of the details of a previous difficulty between a party to a homicide and a third party is not competent. See Thompson v. State, 84 Miss. 758, 36 So. 389; Brown v. State, 88 Miss. 166, 40 So. 737; Herman v. State, 75 Miss. 340, 22 So. 873; Raines v. State, 81 Miss. 489, 33 So. 19; Hale v. State, 72 Miss. 140, 16 So. 387; Foster v. State, 70 Miss. 755, 12 So. 822, and especially Mabry v. State, 71 Miss. 716, 14 So. 267.

We come now to the sharp question presented: That the appellate court should reverse this cause because the court declined to permit the statement to go to the jury that the deceased threatened the accused because of, and in connection therewith, the appellants' activity in procuring an indictment against the deceased for an assault and battery upon Mrs. McCain, his wife. This

character of testimony is generally relevant and pertinent for the reason stated in the Clark case, supra.

We have searched the record, and nowhere else, nor by any other witness, did the accused seek to make this specific proof as to the motive for the threats, uttered by the deceased, against their lives. At the common law, the wife is incompetent to testify as to the privileged communications between husband and wife. Hesdorffer v. Hiller, 111 Miss. 16, 71 So. 166, Ann. Cas. 1918E, 191. By statute in this state the common-law rule is modified to the extent that husband and wife are competent witnesses for each other, and may testify against each other in proceedings inter sese. Of course, if the communication, although made under the sanctity of the marital relation, is not of a confidential nature, such testimony, if otherwise admissible, is competent. Hesdorffer v. Hiller, supra. There is no testimony that this communication was made to the wife in the presence of another person. It is idle to say that this communication was not privileged. One reason for the rigid enforcement of the rule in this respect is that it has always been considered as being against public policy to permit either spouse to testify as to privileged communications between them. Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, 62 So. 432, 51 L. R. A. (N. S.) 187, Ann. Cas. 1916A, 1051; Hesdorffer v. Hiller, supra. Neither death nor divorce renders the testimony as to privileged communications between husband and wife, sustaining to each other the marital relation, material, competent, or proper to be heard in courts of justice. Byrd v. State, 57 Miss. 243, 34 Am. Rep. 440; Hesdorffer v. Hiller, supra; and 28 R. C. L., p. 374. Such communication as was sought to be elicited from the wife here has uniformly been held to be privileged. The common-law rule is enforced in this state, except as to litigation between spouses.

As illustrative of this court's position, in the case of U. S. Fidelity & Guaranty Co. v. Hood, 124 Miss. 548,

87 So. 115, 15 A. L. R. 605, relative to privileged communications between physician and patient, this court held that it was error for the court itself to hear the privileged communication, being the statement of a physician, although it was excluded from the jury. As, in the cases cited, the rule of public policy applies here; and the fact that the husband was dead and was not a party to the litigation has absolutely no bearing upon the relevancy of the wife's evidence, by which it is sought to elicit those sacred and confidential communications which the rule of public policy excludes from being heard at any time anywhere so far as the law is concerned; so that for the reason the communication was privileged, the evidence sought to be offered was not competent. But it may be said, and is urged, that no specific objection for that reason was made, and the wife in the case at bar was permitted to testify as to many threats made to her which violated the rule of secrecy imposed by the law on marital privileged communications. It is true that the court was not given an opportunity to sustain an objection to other statements which were privileged, but there was competent testimony offered by Mrs. McCain that was not privileged of things that occurred in a conversation which was not between husband and wife alone. These statements were competent. But in this particular instance no one was shown to be present; and the presumption is, that if the communication was privileged, it was made between husband and wife alone at a time when they were not conscious of the presence of any other person.

The court sustained a general objection. What reason animated it, we do not know. The record does not disclose, but this witness could not deliver this specific testimony. It was, therefore, as to this case immaterial and irrelevant, although this evidence might have been made pertinent and relevant by another witness under different circumstances. It is true that we do not notice

objections which are not made in the court below generally, but there are limitations; and we would not hastily consider the matter if no objection at all had been made had we been called upon to raise even this question of public policy for the first time in this court. But the court excluded this evidence, and under the law it was properly excluded. Because the judge gives the wrong reason or an insufficient reason, or no reason for excluding the evidence, if the ruling be proper, it cannot be said that the ruling or judgment or decree, as the case may be, is wrong. The action of the court was correct; but it did not give any reason therefor, nor was the objection specified upon the ground which we have stated. This court has always refused to put a court in error when its conclusion was correct. This was early adopted as the rule of this court. Torrey v. Fisk, 10 Smedes & M. 590; Yazoo & M. V. Railroad Co. v. Adams, 81 Miss. 90, 32 So. 937. In the latter case, the court declined to reverse the chancellor when he had reached the right result, although the wrong reason appears as inducing the judgment of the court in the particular matter. Cases might be multiplied. There is respectful authority in this country for the position that the appellate court in the matter of privileged communications between husband and wife, on the ground of public policy, will enforce the rule even though there is no objection in the lower court, and the matter was first raised in the appellate court. But we are not required to go that far in this case. The court correctly sustained the objection, and most probably had in mind the correct reason for its ruling; whether it did or did not, we cannot say it committed error when it reached the right conclusion.

It is complained that the court erred in overruling a motion for a new trial because two jurors who tried the case had been in the courtroom at a former trial, and had prejudged the case. There are two obvious answers to this objection: First, in his motion for a new trial the at-

torney for the appellants did not make and file with the motion his affidavit that he did not know of the alleged incompetency of the jurors at the time they were accepted on the panel. This affidavit is essential. See Salmon v. State, 151 Miss. 539, 118 So. 610; Samuels v. State, 153 Miss. 381, 120 So. 920; Grady v. State, 158 Miss. 134, 130 So. 117; and Long v. State (Miss.), 141 So. 591. Second, we are further of the opinion that the overwhelming weight of the evidence warranted the court below in concluding that the two jurors complained of were fair and impartial, and the evidence wholly fails to show any prejudgment of the case, although there is a conflict in the evidence as to the length of time they were in the courtroom; each of them denying that they heard any substantial part of the testimony or formed any opinion relative to the merits of the case.

There are other errors assigned which are without merit. We find no reversible error in this case.

Affirmed.