197 So.2d 257 (1967)
Douglas LADNER
v.
STATE of Mississippi.
No. 44203.
Supreme Court of Mississippi.
March 27, 1967.
*259 Oscar B. Ladner, Gulfport, for appellant.
Joe T. Patterson, Atty. Gen., by R. Hugo Newcomb, Sr., Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
Douglas Ladner was indicted for the murder of his wife, Patricia. He was tried and convicted in the Circuit Court of Pearl River County, and, the jury having certified that it was unable to agree upon his punishment, was sentenced to serve a life term in the penitentiary. It is from that conviction and sentence that this appeal has been prosecuted.
This is the second time the case has appeared here. The first appeal was from a judgment refusing to grant relief on an application for a writ of habeas corpus. See Ladner v. Walker, 184 So.2d 401 (Miss. 1966. The facts set out in the original opinion are substantially the same as now appear in the record. The few exceptions will be noted in the statement which follows.
After the indictment was returned by the grand jury, the defendant moved to dismiss the indictment upon the ground that the grand jurors who returned it were drawn from a list of names which contained no resident freeholders, and that the trial court had not complied with the statute so that freeholders could be summoned as grand jurors as provided by Mississippi Code sections 1762, 1762-01, 1762-02, and 1762-03 (Supp. 1964). It was further contended that the grand jury was not drawn proportionately from the respective supervisors' districts of the county, as required by Mississippi Code section 1766 (Supp. 1964).
A full hearing was had upon the motion. It was shown that the members of the Board of Supervisors of Pearl River County had entered an order upon their minutes containing the following recitation:
"The Board having determined the proportion of qualified persons to be selected from each respective district did then, using said registration books of said county and state, and the land assessment roll of said county, and the above mentioned certificate of the Circuit Clerk of said county and state, select and list the following named qualified persons of good intelligence, sound judgment and fair characte(d) from each of the respective supervisors' districts and from all of said supervisors' districts as follows, to-wit: * * *"
There followed a list of the names of the persons selected.
The testimony shows, however, that there was one additional name added later, not drawn from the box. The thrust of defendant's argument is that the jury was drawn from a list made up at the April meeting of the Board of Supervisors for duty in April, and it is contended that this method of selecting the jury was irregular and improper, for the reason that the Board of Supervisors' districts were not constituted on the basis of population as required by Mississippi Code section 2870 (1956). The testimony also shows that an order of the circuit judge had been entered providing that the jury list should be taken *260 from a list containing the names of freeholders, as well as qualified electors, as provided by Section 1762-01, supra.
Section 1766, supra, requires the Board of Supervisors, at its April meeting, to "cause the jury box to be emptied of all names therein, and the same to be refilled from the jury list as made by them at said meeting. If the jury box shall, at any time, be so exhausted of names as that a jury cannot be drawn as provided by law, then the board of supervisors may at any regular meeting make a new list of jurors in the manner herein provided."
Mississippi Code section 1774 (1956) provides that the judge may draw the names of persons to be summoned as grand and petit jurors in vacation. The record is not clear as to when the list was drawn, but it appears that the list of jurors drawn for duty at the April 1966 term of the circuit court was drawn from the jury list provided by the board of supervisors for 1965. In any case, however, the jury laws of this State are merely directory, and a jury list drawn informally or in an irregular manner is legal "after it shall have been impaneled and sworn." Miss.Code § 1798 (1956); Ferguson v. State, 107 Miss. 559, 65 So. 584 (1914). Moreover, the fact that a Board of Supervisors fails to select the jury from the districts proportionately does not authorize the quashing of the venire, nor the indictment. Atkinson v. State, 137 Miss. 42, 101 So. 490 (1924). The jury box may, however, be quashed within the sound discretion of the trial judge. Quick v. State, 132 Miss. 794, 96 So. 737 (1923).
There was also filed a motion to dismiss the indictment against the defendant because no women were summoned to serve upon the grand jury. This is not argued on appeal, apparently because this Court has settled this question, since the motion was filed, in the case of State v. Hall, 187 So.2d 861 (Miss. 1966).
The appellant assigns as error that he was not permitted to question a member of the Board of Supervisors with reference to whether or not names submitted by the Board included freeholders of the county. We are of the opinion that the action of the trial court was correct because this assignment is based upon an alleged failure of the Board of Supervisors to place the names of persons in the jury box who were not qualified electors but who were freeholders as permitted by Section 1762-01, supra.
In Black v. State, 187 So.2d 815, 817 (Miss. 1966), we pointed out that:
"Thus, in an effort to obtain qualified Negroes for jury service, without regard as to whether or not they were qualified electors, the Mississippi Legislature extended the duty to serve on juries, not only to electors, but also to persons who are resident freeholders."
In order for the defendant to complain that he has been discriminated against because persons of an ethnic race group or class have not been included on the jury list, it must appear that the defendant is a member of the class discriminated against. 24 Am.Jur. Grand Jury section 28 at 852 (1939).
It does not appear from the record that appellant was prejudiced by any of these matters assigned relating to the preparation of the jury lists or the drawing of the jury.
At about 6:00 o'clock, on the evening of Sunday, November 7, 1965, John Howard, Deputy Sheriff, received a call from Cecil Ladner, appellant's brother. Cecil Ladner told Howard, "John, get to Douglas' (appellant's) house as fast as you can, something bad has happened." Howard called the sheriff, and then proceeded to appellant's home where he found appellant on the porch. When Howard came up, appellant began repeating: "I didn't do it." He was met by Dr. Powell, Mrs. Ladner's doctor, *261 who greeted him with the words: "She is dead." John Howard and Dr. Powell went into the bedroom where they found Mrs. Ladner's body lying on the bed.
Howard returned to the porch and asked appellant if anybody else had been there that day, and appellant replied that no one had been there except his wife and himself. Howard noticed that appellant's right hand was badly swollen and asked Dr. Powell to examine it. Dr. Powell found it badly swollen and said that it was one and a half times thicker than the left.
Appellant did not testify.
Howard said that appellant kept telling him that he "didn't do it," that Mrs. Ladner kept falling out of bed and he kept putting her back in bed. Appellant appeared to have been drinking heavily and smelled of alcohol. He asked Howard to have the doctor give him a shot, and he appeared upset.
Both the sheriff and his deputy testified that Mrs. Ladner's face and eyes were blackened, her nose appeared to be broken, and her mouth had been "busted open." She appeared to have sustained a very heavy blow upon the left side of her head, where there had been bleeding, and her arms, body and legs, down to her ankles, were covered with bruises.
They found the inside of the house a shambles  in the kitchen the stove, tables, pots, pans, and dishes had all been knocked about. There was blood in the bathroom, and in the dirty clothes receptacle there were wet and bloody rags, and there were also bloody rags on the lavatory. In the bedroom, where the body lay, the bed was broken down and rested on the floor. There were feathers, apparently from a torn pillow case, strown about the house. The same kind of feathers were found adhering to appellant's shoes. In the corner of the room where the body was found there also were wet bloody rags and part of a pillow case which was also wet and bloody, indicating that an effort had been made to clean up the blood.
This description of the scene of the homicide by the sheriff, his deputy, and Dr. Powell, and of the condition of decedent's body, is supported by numerous photographs in the record. These witnesses also agreed as to appellant's swollen right hand.
On Wednesday, preceding this Sunday, Gordon Ladner (son of appellant and Patricia Ladner, the deceased) had made an affidavit against his father, the appellant, charging that he had willfully and unlawfully disturbed the peace and threatened to do him bodily harm, and to kill him.
On that occasion, the sheriff had gone to appellant's home where he found appellant and Mrs. Ladner. Mrs. Ladner's clothes were torn and in disarray, her face and eyes had been blackened, her mouth slit, and she appeared to be in pain. In the presence of appellant, the sheriff asked Mrs. Ladner what had happened to her and she stated that appellant had beaten her. He did not deny it.
The next morning, Thursday, Mrs. Ladner, the appellant, and their son, Gordon Ladner, came to the courthouse for the purpose of having the charges against appellant dismissed. The deceased, appellant, and their son sat around a table and had a talk with the sheriff, during the course of which deceased asked the sheriff to talk to appellant and to try to get him to "straighten out." She also asked appellant not to hurt their son, Gordon Ladner.
The only direct medical evidence was given by Dr. Powell, in whose opinion the deceased had died of massive trauma to the body and a depressed fracture of the skull above her left eye. Photographs of Mrs. Ladner's body show it covered with bruises from head to foot. As opposed to this, there was testimony on behalf of appellant tending to show that deceased took sleeping tablets or other drugs, drank to excess, and when under the influence of drink and drugs, frequently fell and bruised *262 herself. Hypothetical questions were propounded to a medical expert, as a witness for appellant, as to the possibility that the deceased's injuries might have resulted from natural causes, or from falling while under the influence of drug and drink. Also, it was sought to develop from this witness that the method employed by Dr. Powell in his examination of the deceased, in diagnosing the depressed skull fracture, was incorrect and inadequate to determine that such a fracture had been sustained.
At most, this evidence did no more than raise factual questions for the determination of the jury.
The evidence of appellant's guilt, although circumstantial, is overwhelming. Twenty instructions were granted at the request of appellant and more than amply informed the jury as to the legal propositions upon which he relied. The two instructions requested by appellant and refused by the court obviously were direct comments on the weight of evidence and were properly refused. Each of the instructions granted the state contained correct statements of law applicable to the case.
The appellant next contends that the trial court was in error in permitting the introduction of testimony by the sheriff as to the condition of the deceased and certain remarks made by her on Wednesday prior to her death on the following Sunday. After the defendant had objected to testimony of the sheriff as to the condition of the deceased on Wednesday, he was permitted to testify as follows:
Q. Was any statement made to you on that occasion by Mrs. Ladner?
A. I asked Mrs. Ladner what happened and she said Douglas had beat her.
Q. That was Wednesday prior to her death?
A. Yes.
Q. When did you next see Mrs. Ladner?
A. Thursday-morning, the following morning. She came to the courthouse here.
The jury was retired on objection of the defendant and it developed that on the occasion referred to Mrs. Ladner had gone to the courthouse with her son and appellant, and that their purpose in going there was to drop the charges against her husband for threatening the life of their son. It further appeared that appellant was present during the time the statements were made. The sheriff said:
"She asked me if I would talk to Doug and try to get him straightened out and I talked to all of them sitting at the end of the table over there."
The sheriff was then asked: "Did you talk to Douglas?" He answered: "He was in the presence and we all talked right over there."
The question is whether or not statements of the deceased made in the presence of the defendant with reference to a prior assault are admissible in the trial of the defendant for the murder of the person who made the statements.
It was said by the textwriter in 20 Am. Jur. Evidence section 273 at 261 (1939), as follows:
"Evidence of circumstances which tend to connect the accused with the commission of a crime is properly admitted, even though inconclusive in character. Such evidence is competent to establish many varying facts. Circumstantial evidence may alone be available in proving elements of crime, such as malice, intent, or motive which exist only in the mind of the perpetrator of the deed. The corpus delicti may be established by circumstantial evidence. Such evidence may be used not only to establish existence of a certain state of facts, but also to *263 corroborate other testimony, such as the testimony of an accomplice."
In the instant case, the testimony shows that on Wednesday before the alleged homicide on Sunday, the sheriff went to the home of the defendant and saw the deceased. He testified:
"Mrs. Ladner was there and her clothes were torn up on her and disarranged and her face and eyes were black, and her mouth busted open, and she looked like she was hurting pretty badly."
He then said, over the objection of the defendant's attorney:
"I asked Mrs. Ladner what happened and she said Douglas had beat her."
Later, the sheriff was asked if Mr. Ladner was home at that time, and he answered, "Yes, he was there whenever I was talking to her."
Underhill, Criminal Evidence section 644 (5th ed. 1957) states that where circumstantial evidence is relied upon, it is especially proper that motive be shown. Such evidence is relevant as rendering more probable the inference that the defendant committed the homicide. The desire to revenge for real or fancied injuries is often a potent motive for homcide.
Underhill, Criminal Evidence, supra, at 1538, says:
"The means and mode of showing that the defendant was prompted by revenge are elsewhere treated, and here it need only be said that it is relevant to show that the daughter of the deceased had, by his direction, caused the arrest of the accused for bastardy, or that deceased had reported defendant's still to officers, or that the deceased had procured the indictment or arrest of the accused. * * *"
Previous ill-treatment and lack of affection toward the wife may be shown, where the homicide of a wife is concerned, as supplying a motive. Walton v. State, 156 Miss. 499, 126 So. 29 (1930); Clemmons (Clemens) v. State, 92 Miss. 244, 45 So. 834 (1908); Underhill, supra, at 1541.
Underhill, supra, section 645, states that evidence of previous quarrels and difficulties between deceased and accused is generally admissible to show motive. Accordingly, Underhill says at page 1545:
"Evidence that the accused had frequently quarreled with or brutally beaten and threatened to kill his wife, with whose murder he is charged, is competent to enable the jury to determine whether malice was present."
Also, at page 1548, the writer says:
"Trouble between the deceased and third persons, however, is not material, unless the accused is shown to have been involved in or connected therewith, * * * or unless such previous difficulties immediately led to the homicide in question."
See Carter v. State, 167 Miss. 331, 145 So. 739 (1933). To the same effect is 20 Am. Jur., Evidence, section 313 at 293 (1939).
In Hardy v. State, 143 Miss. 352, 108 So. 727 (1926), this Court held that previous difficulties between the deceased and the person accused of murder and threats made at the time are admissible, but that details of the previous altercations are not admissible.
In Reeves v. State, 201 Ala. 45, 77 So. 339 (1917), the Court affirmed a conviction of the defendant for killing his wife. The defendant claimed that the killing was accidental, and it was proper to show the state of feeling existing between defendant and deceased, his wife, as tending to negate this contention.
State v. Clark, 119 La. 733, 44 So. 449 (1907) involved a prosecution for murder; proof of prior difficulties between the accused and deceased, and of a prior attempt by the former on the life of the latter, were held to be admissible in evidence to show *264 motive and malice in the killing. To the same effect see Hester v. State, 144 Miss. 789, 110 So. 443 (1926).
The case of Gillum v. State, 62 Miss. 547 (1885) shows that before the killing defendant knew of an indictment against himself for a misdemeanor, which he believed to have been procured by deceased, and defendant had threatened to kill him for it. This Court held that the indictment was competent to establish motive for the crime charged. See Clemmons (Clemens) v. State, supra.
In Webb v. State, 73 Miss. 456, 462, 19 So. 238, 239 (1895), the Court pointed out that the "evidence of the seduction of the sister of the deceased by the defendant, and of the whipping by him of the nephew of deceased, was competent, as tending to show motive on the part of the accused to kill the deceased."
In Ouidas v. State, 78 Miss. 622, 29 So. 525 (1900), this Court held that evidence of illicit relations between defendant and the wife of the deceased in a murder case was admissible to show motive for the killing.
In Bryant v. State, 172 Miss. 210, 157 So. 346 (1934), it was pointed out that testimony on the issue of identity where it was so connected in circumstances and in point of time to show the mental attitude or state of mind of the defendant was admissible in evidence.
In Carter v. State, supra, this Court points out that in the case of Clark v. State, 123 Miss. 147, 85 So. 188 (1920), the Court not only permitted threats made by the deceased to be introduced but also permitted testimony to show that the deceased had raped the wife of the defendant. The Court said:
"The case is easily distinguished from the rule which obtains in this state by which this court holds that evidence of the details of a previous difficulty between a party to a homicide and a third party is not competent." 167 Miss. at 339, 145 So. at 740-41.
The objection that the testimony above set out tends to prove another crime, in addition to the crime for which he is charged, is not well taken because evidence of other crimes is admissible when such evidence tends to establish or explain the motive for the crime with which the defendant is charged, particularly in cases involving circumstantial evidence. Hawkins v. State, 224 Miss. 309, 80 So.2d 1 (1955); Reeves v. State, supra.
The trial court was correct in overruling the objection to this evidence as it tends to show motive and malice, particularly where it is shown that the defendant was present when the deceased told the sheriff about the beating and did not deny it. The jury was warranted in finding from the evidence that the fatal beating on Sunday was the final culmination of a quarrel between appellant on the one hand and his wife and son on the other. Appellant had beaten her and she attempted to intercede for their son who had made the affidavit charging that his father had threatened to kill him. It is true that the son sought to explain away his making of the affidavit, saying that he had not read it, and that his father had not threatened to kill him. However, his testimony was contradicted in several material particulars, and the jury was justified in believing that it was influenced by appellant's gift to him of a new automobile the week before the trial.
In the case of Gillum v. State, supra, the Court held that where the evidence in that case showed that the defendant knew of an indictment against himself for a misdemeanor, which he believed to have been procured by the deceased, and had threatened to kill him for it, the indictment was competent evidence to show motive.
This evidence also serves to show the mental attitude of the defendant; it shows motive and tends to answer the *265 question as to why the defendant killed his wife. See Bryant v. State, supra. Moreover, although threats against third persons are not ordinarily admissible in evidence, they are admissible if it is first shown that such threats are connected with the motive for the homicide. Carter v. State, supra.
The objection of the defendant to the testimony of the State's rebuttal witness, Deputy Sheriff John Howard, to the effect that the State's witness Gordon Ladner was afraid to go home and wanted the witness to go with him was properly overruled. This testimony tended to rebut the testimony of Gordon Ladner when he said: "I deny it, if he said it he is a liar." Gordon Ladner had testified that he did not read the affidavit he had signed against his father, charging the latter with threatening his life, nor intended to make the charge, and said that he was not afraid of his father.
The brother of the defendant was introduced as a witness for the defendant, and on cross-examination denied that he called the sheriff on Wednesday before the alleged homicide, and denied that he told the sheriff that he took a gun from the defendant or told the sheriff that he was afraid that appellant was going to hurt somebody. The attorney for the defendant objected to this testimony and the court overruled the objection. He was then asked: "You told the sheriff that on Wednesday, didn't you?" The witness answered: "I said I took the gun."
Appellant's son, as a witness for appellant, testified, without objection, that on the occasion in question, his father had not fired the gun at anyone, but had fired it into the air, and, afterward, had voluntarily put the gun down.
Appellant complains that this testimony was inadmissible and prejudicial, and for that reason the case should be reversed. Although this assignment of error is not argued as required by our rules (Dozier v. State, 247 Miss. 850, 157 So.2d 798 (1963)), we are of opinion that this testimony on cross-examination was admissible to show the mental attitude and motive of the defendant on the day the sheriff was called.
The defendant alleges that he was not permitted to show that the deceased was in a run-down physical condition, that she consumed intoxicating liquors, did not eat regularly and was easily bruised. The record shows, however, that the defendant introduced his son as a witness, who testified that his mother did take pills and drink excessively. The medical doctor introduced by the defendant gave full evidence upon this subject in answers to hypothetical questions. We cannot agree that the failure of the court to permit the answering of one or two other questions on this same subject materially prejudiced appellant. It would have been, at most, merely cumulative. If error, it was harmless, since appellant was allowed to develop this evidence from other witnesses.
We are of the opinion that the photographs of the body of the deceased, showing the innumerable cuts and bruises, were properly admitted. Price v. State, 54 So.2d 667 (Miss. 1951); Hancock v. State, 209 Miss. 523, 47 So.2d 833 (1950).
The attorney for appellant complains that the trial judge directed him to sit down and apparently assumed that the court meant for him to stop his cross-examination of a witness, rather than to emphasize that he had already sustained the particular objection. This contention is not well taken. The defendant's attorney later was permitted to ask the question previously objected to, and the trial judge did no more than control the procedure and method of developing the testimony, and his remarks to counsel in performing this duty do not constitute error unless such remarks prejudicially discriminated against the accused. Jackson Yellow Cab Co. v. Alexander, 246 Miss. 268, 148 So 2d 674 (1963).
*266 The overall evidence was sufficient to support a finding by the jury that appellant beat his wife to death following a days-long quarrel which had involved both her and their son, and which had, in its beginning, brought about the affidavit charging that appellant had threatened to kill their son.
The events shown to have occurred on the several days preceding the homicide were circumstances tending to show and explain the malice of appellant toward his wife, as well as a course of physical abuse and mistreatment which ended only with her death from the final beating.
Affirmed.
ETHRIDGE, C.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.